## C. T. WILLIAMS v. J. W. CASTLEMAN.

No. 3593. Decided December 13, 1922.

(247 S. W., 263.)

1.—Commissioners Court—Creating Justices Precincts—Constitution—Implied Grant of Powers.

Article 5, section 18, of the Constitution, in giving to the Commissioner's Courts of the several counties the power to determine the number and boundaries of justice precincts therein from time to time, for the convenience of the people, vested in that body an implied power to determine the population of a given territory making the election of a justice of the peace therein convenient; also to determine whether the population of a city contained in any precinct exceeded 8000, so as to warrant, under the Constitution, the election of two justices in such precinct. No further legislative authority was necessary to the exercise of such power. (pp. 201-203).

2.—Same—Method of Ascertainment.

In determining whether a city embraced in any justice precinct contained 8000 population so as to require the election of two justices of the peace therein, the Commissioner's Court was not restricted to the latest census of its population by the Federal Government. The fact of a great subsequent increase in population consequent upon the discovery and development of a great oil field in its vicinity would be a matter of judicial knowledge; and the personal knowledge of members of the court, information derived from the Post Office and from the Secretary of the Chamber of Commerce, and other sources, could properly be resorted to without an independent census of the city population made by the court. (pp. 204-206).

3.—Commissioners Court—Collateral Attack on Action.

Commissioner's Courts, in acting under article 5, section 18, of the Constitution, were within the sphere of their powers and must be regarded as courts of general jurisdiction. In the absence of fraud their determination of the facts warranting their action cannot be collaterally attacked; and an injunction against their appointee acting as an officer was a collateral and not a direct attack on such determination. (p. 207).

112 Tex.—13

#### 4.—Right to Office—Injunction—Quo Warranto.

The Commissioner's Court having determined that a second justice of the peace was required in a precinct by the existence of a city of more than 8000 population within its limits, and having filled the vacancy by appointment and qualification of such officer under authority of article 5, section 8, of the Constitution, injunction against such officer serving and taking the fees of office, at suit of the rival justice, and on the ground that the former was disqualified for office by reason of insufficient length of residence, was not the proper remedy. The right to the office could only be determined by a *quo warranto* proceeding. (pp. 207, 208).

#### 5.—Commissioner's Court—Office—Filling Vacancy.

Having created the office of Justice of the Peace Number 2, the Commissioner's Court were authorized to fill the vacancy in such office by appointment, pending a general election. (p. 208).

#### 6.—Cases Discussed.

State ex rel. Dowlen v. Rigsby, 17 Texas Civ. App., 171, 43 S. W.. 271, followed. Brooks v. Dulaney, 100 Texas, 86, distinguished. (pp. 203, 204).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Stephens County.

*T. B. Rigdell, Goree, Odell & Allen,* and *Ernest May,* for appellant.

The court erred in granting the temporary injunction prayed for by relator, for the reason that the office of the Justice of the Peace for Precinct No. 1, Place No. 2, Stephens County, Texas, was legally created and is a legal office. Constitution of Texas, Art. 5, Section 18; Williams v. Ball, 52 Texas, 603; Bradford v. Moseley, 223 S. W., 172; Coffman v. Goree Independent School Dist., 141 S. W., 132; Parker v. Harris County Drainage Dist. No. 2, 148 S. W., 351; Wilson v. Brown, 145 S. W., 639; Gaines v. Newbrough, 12 Texas Civ. App., 466, 34 S. W., 1048; McCormick v. Jester, 115 S. W., 278-287; Ryan v. Tuscaloosa, 155 Ala., 479; 46 So. 638; Rumsey v. People, 19 N. Y., 41; Decamp v. Eveland, 19 Barb., 81; Kokes v. State, 55 Neb. 691, 76 N. W., 467; State v. Long, 17 Neb., 502, 23 N. W., 337; 23 Corpus Juris, 163.

The Commissioners' Court being created by express constitutional provision is not a court of limited and special jurisdiction but a court of general jurisdiction in the sphere of the powers conferred upon it. Coffman v. Goree Independent School Dist., 141 S. W., 132; Wilson v. Brown, 145 S. W., 639; Parker v. Harris County Drainage Dist. No. 2, 148 S. W., 351; State Ex Rel Dowlen v. Rigsby. 17 Texas Civ. App., 171, 43 S. W., 271; City of El Paso v. Ruckman, 92 Texas, 86; Jackson v. Houser, 208 S. W., 186.

No fraud being alleged the order of the Commissioners' Court is conclusive and may not be attacked in a collateral proceeding. Williams v. Ball, 52 Texas, 630; Bradford v. Moseley, 223 S. W., 172; Gaines v. Newbrough, 12 Texas Civ. App., 466, 34 S. W., 1048; Busch

& Co. v. Caufield, 135 S. W., 244; Padgett v. Young County, 204 S. W., 1046; Callaghan v. Salliway, 5 Texas Civ. App., 239, 23 S. W., 837.

The court erred in granting and in not refusing the temporary injunction prayed for by relator for the reason that the office being legally created the respondent was at least a de facto officer and might not be interfered with in the performance of the duties of his office by means of injunction on the part of relator. San Antonio v. Strumberg, 70 Texas, 368; Hulse v. Powell, 21 Texas Civ. App., 171, 51 S. W., 862; McDonald v. Lyon, 43 Texas Civ. App. 484, 95 S. W., 67; Lawson v. Baker, 220 S. W., 260; McAllen v. Rhodes, 65 Texas, 348; Callaghan v. Irvin, 40 Texas Civ. App., 435, 90 S. W., 335; Uhr v. Brown, 191 S. W., 380; Words & Phrases, First Series, De Facto Officers, p. 1845.

Courts of equity will not interfere by injunction in controversies relating to public office. Relator, if injured, had an adequate remedy at law to recover the moneys received by appellant in discharging the duties of his office. McAllen v. Rhodes, 65 Texas, 348; City of Dallas v. Consolidated St. Ry. Co., 108 Texas, 342; Jackson v. Houser, 208 S. W., 186; Doss v. Howard, 202 S. W., 890; Rogers v. Powell, 93 S. E., 917; State ex rel Hawes v. Withrow, 154 Mo., 397, 55 S. W., 460; Hubbell v. Armijo, 13 N. M., 482, 85 Pac., 1046; Green v. Knox (N. Y.) 67 N. E. 910; People v. Farley, 1 How. Prac. (N. S.) 71; State v. Rice, 66 S. C., 1, 44 S. E., 80; 29 Cyc., 1416, with authorities cited; 14 R. C. L., 374, with authorities cited.

*Doyle & Bounds*, for appellees.

Appellant had no more right to go into appellee's territory and collect the fees of his office than he would to go upon appellee's lands and take his nuts and fruits or gather his grain, and that when he did do so he was liable to appellee for the value of what he took and was a naked trespasser upon appellee's premises and could be injoined by appellee from further trespassing upon his premises and from taking the property of appellee. Callaghan v. McGown, 90 S. W., 319; Ehlinger v. Rankin, 29 S. W., 240; Troils v. Gittinger, 230 S. W., 233.

No authority was given and consequently it was not the province of the commissioners court to determine when the city of Breckenridge attained to a city of eight thousand or more population, and any assumption of such authority is absolutely void. Harris Co. v. Smith, 187 S. W., 701.

In the case of Brooke v. Dulaney, 10 Texas, 86, 93 S. W., 997, the Supreme Court of this State has settled the question involved in this case and established the rule announced by us to this effect, towit:—That whenever the taking effect of any law depends or is made to depend upon the number of population in any given locality

and such law makes no special provision for the method of ascertaining the number of such population, the most recent United States census prevails.

The courts of our State and all other states take judicial notice of the published official census of the United States, for the purpose of determining the population of the several counties at a given period. State v. Evans, 66 S. W., 357; State v. Marion County Court, 30 S. W., 103, and 31 S. W., 23.

Appellant can claim no part of the time that he was stationed at Breckenridge under orders of a superior officer as a part of the term of his residence in Stephens County. And in strict accordance with the law, his residence began on the day that he moved his wife and family to Breckenridge, which was long after he had taken the office he now seeks to hold. Rev. Stats., Art. 3387.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case is before us on certified questions from the Honorable Court of Civil Appeals of the Second District. The facts of the case are taken from the certificate.

On March 5, 1921, the Commissioners' Court of Stephens County, by an order duly entered, declared that the city of Breckenridge, located in Justice Precinct No. 1, was a city of over 8000 population; adjudged that another justice court was necessary in the precinct, and created another justice court for Precinct No. 1, designating it as Place No. 2. They then appointed appellant, C. T. Williams, Justice of the Peace of Precinct No. 1, Place No. 2. In pursuance of this order and appointment, appellant gave bond, took the oath of office, and entered upon the active discharge of the duties of the office. The court in the order erecting the office declared, after considering the matter, and being fully advised, and from all the facts and evidence before them, that the city of Breckenridge had a population of over 8000; that there was a necessity for the officer, and that the administration of the law in the county and the service of the people of the precinct demanded and required the creation of said justice court. Appellee, J. W. Castleman, was the duly elected and qualified justice of the peace of Precinct No. 1, Stephens County, for the term ending in 1922, and was at the time these proceedings were begun in the active discharge of the duties of his office. Shortly after appellant assumed the duties of the place to which he was appointed, appellee brought this suit in the District Court against him for injunction, alleging that appellee was entitled to all the fees of office in Justice Precinct No. 1, and that no such office existed as that to which appellant had been appointed, for the reason that under the 1920 United States census Breckenridge had only 1846 inhabitants, and that appellant was ineligible to hold the office of justice of

the peace because at the time of his appointment he had not resided in the county or precinct for six months.  Appellee prayed judgment for the fees which had been previously collected by appellant, amounting to $300.00, and for an injunction restraining appellant from further acting in the capacity of justice of the peace.  No allegations of fraud were made against the Commissioners' Court in ascertaining any of the facts relative to or entering the order erecting the office in controversy.  The trial court considered the petition, answer, and evidence introduced, upon hearing for temporary injunction, and granted the temporary injunction because, as found by him, appellant had not resided in the precinct six months, and was therefore ineligible to hold the office.  Appeal is from this order of the trial court.  The evidence showed that the allegations of plaintiff's petition were true, with the following modifications: The Commissioners' Court never at any time prior to the erection of the office in controversy made any official canvass or enumeration of the population of Breckenridge, and made no estimate thereof, other than to talk individually with the postmaster of Breckenridge and the Secretary of the Chamber of Commerce concerning the probable population, and considering newspaper editorials, etc., that came under their individual notice; the court assumed and took judicial knowledge that the city of Breckenridge was a city of over 8000 inhabitants, and based the order creating the office here in controversy upon said assumption and judicial notice, and what the individual members of the court knew about the population of Breckenridge.  The Commissioners' Court were satisfied that it was a fact that Breckenridge at the time they created the office was a city of more than 8000 population.  Other facts are stated in the certificate, but the foregoing is sufficient for the purposes of this opinion.  Upon this state of facts the Court of Civil Appeals certifies the questions which follow:

1.

"Were the Commissioners' Court of Stephens County authorized under the law and Constitution to create the office of justice of the peace, precinct No. 1, place No. 2?

2.

"If they were so authorized, did they follow the proper method of determing the population of Breckenridge, and can that determination and order be collaterally attacked?

3.

"Is injunction a proper remedy for the determination of the legality of the acts and orders of the Commissioners' Court herein, and the legality of the appointment of the respondent to said office?

4.

"If the Commissioners' Court were authorized to create the office, were they authorized to fill it by appointment, pending a general election?"

The questions will be discussed and the answers made in the order presented in the certificate. This involves a construction and interpretation of Sections 18 and 28 of Article V of the State Constitution. Section 18 reads as follows:

"Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more than eight. The present county courts shall make the first division. Subsequent divisions shall be made by the Commissioners' Court, provided for by this Constitution. In each such precinct there shall be elected at each biennial election, one justice of the peace and one constable, each of whom shall hold his office for two years and until his successor shall be elected and qualified; provided that in any precinct in which there may be a city of 8000 or more inhabitants, there shall be elected two justices of the peace. Each county shall in like manner be divided into four commissioners' precincts in each of which there shall be elected by the qualified voters thereof one county commissioner, who shall hold his office for two years and until his successor shall be elected and qualified. The county commissioners so chosen, with the county judge, as presiding officer, shall compose the county Commissioners' Court, which shall exercise such power and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

The fundamental proposition relied on by the appellee is stated in his argument filed in the Court of Civil Appeals as follows:

"Whenever the taking effect of any law is made to depend upon the number of population of any locality and the law itself makes no provision for the method of determination and ascertainment of the number of population of said locality, then such population is determined solely and only by the most recent United States census."

From this it is apparent that the first question presented is one merely of the construction and interpretation of Section 18, Article V, of the Constitution, for the purpose of determining whether or not this Section confers upon commissioners' courts the power to ascertain the population of any city in any of the justice precincts into which counties may be divided.

The primary rule of interpreting and construing the Constitution is to ascertain the intention of the people in adopting it, and give effect to that intention. 2 Sutherland on Statutory Construction (2d Ed.), secs. 369, 370; Ellis County v. Thompson, 95 Texas, 22, 31,

64 S. W., 927, 66 S. W., 48; Cooley's Constitutional Limitations (6th Ed.), 69.

In determining the intention we may, of course, examine previous constitutions, as well as the Journals of the Convention which framed the Constitution. 6 Ruling Case Law, page 50, § 45; Cooley's Constitutional Limitations (6th Ed.) 80.

The history of Section 18, Article V, of our present Constitution begins with the Constitution of the Republic of Texas. Section 2, Article IV, of the Constitution provided that the Republic should be divided into *"convenient judicial districts,* not less than three nor more than eight." Section 11 of the same Article authorized the Congress to divide the Republic into *"convenient counties"*; while Section 12 related to justices of the peace, declaring, "there shall be appointed for each county a *convenient number of justices of the peace"*. By these sections the number of judicial districts, counties, and justices of the peace were left to the discretion of the legislative department of the government, subject to certain limitations specified in Sections 2 and 11 of said Article. 1 Gammel's Laws, pp. 1073, 1074.

By an Act approved December 20, 1836, the Congress of the Republic provided for the election of two justices of the peace in each district, the districts being defined to be "each militia captain's district". 1 Gammel's Laws of Texas, p. 1201. It is evident from the legislative enactment that the Legislature considered itself as having power, under the Constitution, to determine the appropriate division of each county into precincts, and the number of justices necessary for each precinct. It is plain, however, that all actions by either the legislative or executive authorities in dividing the Republic into judicial districts, counties, and justice precincts, and fixing the number of justices necessary therefor, were to be governed by the primary purpose declared in the Constitution of the Republic, to-wit: the *"convenience of the people"*. The governing phrases "shall be divided into *convenient judicial districts"*; "the Republic shall be *divided into convenient counties"*; and "there shall be appointed for each county a *convenient number of justices of the peace"*, can have no other interpretation.

The Constitution of 1845 used language similar to that of the Republic, except the limitation as to the number of judicial districts was omitted, and justices of the peace were required to be elected by the people. 2 Gammel's Laws, pp. 1295, 1285, 1286.

By an Act approved May 8, 1846, there were established under this Constitution the county courts of the State, composed of the Chief Justice and four commissioners, who were styled "County Court", all of whom were to be elected by a vote of the people. To this agency was confided the division of the counties *"into convenient precincts for the election of justices of the peace"*. 2 Gammel's Laws, p. 1642.

By an Act approved two days previous to the foregoing, the Legislature provided for the election of two justices of the peace in each precinct of the several counties of the State. 2 Gammel's Laws, p. 1604.

We thus see that by the Constitution of 1845 the legislative discretion to determine the number of justice precincts in each county was not exercised by that body, but was confided, without limitation, to the commissioners' court of each county; but the authority conferred upon this agency was to be exercised *"for the convenience of the people"*. The Legislature, however, fixed the number of justices of the peace who should preside in each precinct.

The Constitutions of 1861, 1866, and 1869 contained substantially the same language as that contained in the previous Constitutions named, except that the Constitution of 1869 provided for the division of each county into five justice precincts, and the election of one justice in each precinct. 5 Gammel's Laws, pp. 11, 12, 21, 869, 878, 865; 7 Gammel's Laws, pp. 411, 414, 415, 423.

On September 11, 1875, when the Constitutional Convention which framed our present Constitution was in session, the Hon. Joel W. Robinson, a member of the Convention from Fayette County, offered the following resolution: "Resolved that each county in the State be divided into as many justice precincts as *the convenience of the population may require."* Journal of the Constitutional Convention of 1875, p. 64. On September 21, the Hon. William Neal Ramey, a member of the Constitutional Convention from Shelby County, offered a resolution reading: "Resolved that each county in this State shall be divided into not less than five nor more than twelve districts, and in each district there shall be elected one justice of the peace", etc. Journal of the Constitutional Convention, p. 186. These resolutions were referred to the Judiciary Committee, and formed the basis of Section 18, Article V, as finally incorporated in the Constitution.

The entire history of this subject shows that from the beginning the dominant constitutional purpose has been to create judicial districts, divide the State into counties, and these counties in turn into justice precincts, *"for the convenience of the people"*.

Another conclusion, supported by the historical inquiry, is that the change from those provisions of previous Constitutions, which left the number of the justices of the peace or justice precincts to the determination of the Legislature, without any specific limitations, except as to the number of justice precincts specified in the Constitution of 1869, to the language of Section 18 of Article V of the present Constitution, wherein the number of justice precincts is confided to the limited discretion of local authorities, was the result, not of any fortuitous circumstance, but of experience. The purpose to leave this determination to local authorities having been reached

from experience and mature consideration, must also be given a controlling effect in the interpretation and construction of this Section of the Constitution.

The fact that the division of the State into judicial districts and counties, and the number of justices of the peace in each county, were originally all confided to State authorities, or an agency to be selected by the Legislature, and that as to the first two the Constitution has continued the same, but as to the latter the power has been denied the Legislature, or any other State authority, and the commissioners' court selected as the constitutional agency to divide the county into justice precincts, evidences a specific purpose to remove the entire subject from the domain of State action, except such reasonable legislative action as might be convenient to render the exercise of the power more effective and uniform.

Commissioners' courts having been granted power to divide their counties into justice precincts, and to determine the number into which each county shall be divided, it follows that there is implied from the grant the additional power and authority to ascertain any fact necessary to make the exercise of the expressly granted power effective.    Cooley's Constitutional Limitations (6th Ed.), p. 78; Story on the Constitution (4th Ed.), § 430; City National Bank v. Presidio County, 26 S. W., 775, 776; San Antonio & A. P. Ry. Co. v. State, 79 Texas, 264, 268, 14 S. W., 1063; Waterbury Co. v. City of Laredo, 60 Texas, 519, 522; McCulloch v. Maryland, 4 Wheaton. 316, 409, 410, L. Ed., 603, 605.  To illustrate: Having been granted by the express language of the Constitution the power to determine the number of precincts into which a county shall be divided, and to divide it into these precincts for the convenience of the people, the commissioners' court, by implication, have the necessary power to determine whether or not there are any people in any particular part of the county, the number of these people, their occupations, and any other fact which might, or might not, make it necessary to establish a justice's court for the convenience of the people.    The Constitution has prescribed that the power of determining the number of justice precincts, and of dividing the county into them, shall be exercised, "from time to time", which means it has a potential existence at all times, and the division, redivision or redetermination may be made at any time.    State ex rel. Dowlen v. Rigsby, 17 Texas Civ. App., 171, 43 S. W., 271, 273.  In this case the question at issue was as to what time the commissioners' court had authority to divide or redivide a county into justice precincts.    On this issue the Court of Civil Appeals, through Justice Williams, who afterwards became Associate Justice of this Court, after quoting Section 18 of Article V of the Constitution, said:

"When the commissioners' court was organized, in pursuance of the Constitution and the laws passed thereunder, it possessed all

powers conferred by both. When the court was once established, no legislation was needed to enable it to exercise the powers given by the above provision, to divide the county into precincts. The direction is plain and simple, and without condition or restriction, except that as to the number of precincts. It is said that no procedure is prescribed by which the power is to be exercised. If any was needed, the statute supplied it, when it required that the proceedings of the court should be recorded in its minute book. Rev. St. 1895, art. 1554. This was all that was necessary. The power to divide the county into justices' precincts is also given by the statute, but not in terms so explicit as those used in the Constitution. Rev. St. 1895, art. 1537. There can be no doubt that both Constitution and Statute confer the power, and the only question is as to its extent. It is contended that a limitation upon the power is found in the constitutional provision fixing the terms of office of precinct officers; and that, since they are to hold for two years, it follows that the precincts cannot be changed during the terms, because the power to alter them would practically enable the court to destroy the office. The language of the Constitution expresses no such limitation. The division is to be made 'from time to time.' The reason for the division is to be the convenience of the people; and the judge, both as to time and convenience, is the court. The limitation contended for by appellant would require the insertion in the Constitution of a proviso which the court cannot read into it. The only limitation imposed serves to indicate the scope of the power. That limitation requires as many as four, and does not allow more than eight, precincts. But for it the county might have been cut up into as many precincts as the court saw proper to establish. By it the intention is made more manifest that, within the limits, the court is to determine the number. As to the time of making the division, it is equally plain. The language 'from time to time, for the convenience of the people,' clearly means that the convenience of the people, as judged by the court, shall control in determining the time when a division is proper. The phrase 'from time to time' repels the idea that it was the purpose to fix any particular time.''

It is thus seen that there is no limitation on the time when the Commissioners' Court may divide a county into justice precincts; and that, aside from the maximum and minimum prescribed in the Constitution, there is no limitation as to number. The Constitution does not state how the power of division by the Commissioners' Court shall be exercised, nor does the statute. From the quotation from the opinion by Judge Williams, *supra*, it is clear that no legislative action was necessary. It is certain that, in the absence of reasonable legislative action the Commissioners' Court may per-

form the duty enjoined upon them in their own way, so long as that performance does not amount to a gross abuse of power, is not fraudulently exercised, or is not so grossly arbitrary as that, under principles unnecessary to discuss, it might be void and amount to no action.  Bourgeois v. Mills, 60 Texas, 76.  Since it is clear that the determination of the facts necessary for action by the Commissioners' court is not made dependent on State legislative action, it is inconceivable that it should be made dependent upon Federal action, in the form of the United States census, unless the Constitution expressly so stated, which is not the case.

There is no part of the duty enjoined by Section 18, Article V, on the Commissioners' Court which may be performed without considering the population, occupations, and industries,—not only of the county, but of each contemplated subdivision of the county; and to say that the Commissioners' Court must follow the census reports which are issued only every ten years, is to destroy the very purpose of the power conferred on the Commissioners' Court to divide the county from time to time into a sufficient number of justice precincts for the convenience of the people.

It is plain from Section 18, Article V, of the Constitution that its prime purpose in not fixing definitely the number of justice precincts in any county, and the number of justices in any particular precinct, was, as it states, "the convenience of the people," that is, to give to the Commissioners' Court some discretion so that the number of precincts may be made to meet the changing needs of the people.

The object of the Constitution in providing for two justices of the peace in precincts containing 8000 or more inhabitants is the same as that declared in the previous paragraph of the same Section,— that is, for the convenience of the people.  No method of determining the population is given in this Section or elsewhere in the Constitution.  The determination of the population by some authority is necessary to set in motion the process by which two justices are to be elected, or a vacancy in the office filled by appointment.  The Constitution contains no express direction, either to the electorate or to the appointive power, as to how or when this question of population is to be determined, nor is any provision made in the statutes therefor.  Vernon's Complete Texas Statutes, 2241, 2286.  But legislation was not necessary to enable the Commissioners' Court to exercise any of the powers given in this provision of the Constitution. State Ex rel. Dowlen v. Rigsby, 17 Texas Civ. App., 171, 43 S. W., 271.

It is true that the Rigsby case, cited above related to the division of the county into justice precincts; but the provision under which the commissioners' court acted in that case is a part of the same Sec-

tion which provides for two justices in precincts containing cities of 8000 or more inhabitants. Both provisions relate to the number of justices which each county may have, and the basic purpose of each is the convenience of the people. The ascertainment of the number of precincts into which any county shall be divided necessarily involves a consideration of the population; and the finding of fact as to whether or not any particular subdivision of the county contains a city of 8000 or more inhabitants involves the exercise of no greater power than does the determination of the population of any particular portion of the county for the purpose of incorporating it in any particular precinct, and is equally as necessary to effectuate the dominant constitutional purpose to establish a sufficient number of courts for the convenience of the people. If the commissioners' court is restricted to population as determined by the United States census reports, available but once in ten years, then the express provision that the county is to be divided into precincts for the convenience of the people (a power which we have seen is potential and may be acted upon at all times), is defeated by the suggested limitation of the census reports. The census reports could, therefore, have no application to the division of the county into precincts; and if it is not to be applied and used for that purpose, then by what course of reasoning could we say that it must be applied, and it alone must be used, in determining the population of any particlar integral part of the precinct? Reading the entire Section together, and bearing in mind its history and its primary and fundamental purpose as shown by that history, we believe that the entire subject is confided to the commissioners' court, and that the court of any particular county is empowered to divide it into precincts, and to designate or afterwards determine which of these precincts contain cities of 8000 or more inhabitants.

The case of Brooks v. Dulaney, 100 Texas, 86, 93 S. W., 997, relied on by the appellee, relates to other and different sections of the Constitution, and has no application here. In that case the governmental unit, to-wit, the county, was the creation of the Legislature under the Constitution, and the Constitution not having in express language defined the method of ascertaining the population of counties, and that prescribed in that instance by the Legislature being so unreasonable, or so unrelated to the subject as to be void, there existed no other authority by which the population was to be determined, except that of the United States census. And since that was the authority provided for in the case of another county office, this Court held that the census report was that which must govern with reference to the offices of district and county clerk, which were the ones there involved. The offices of county and district clerk had both been in existence in the county for thirty years, and it was agreed that during that time the county had a population exceeding

8000; and what this Court is realty held was that the unreasonable method prescribed in the statute for ascertaining the population could not be employed to reduce this population and destroy one of the offices.

In the case before us the commissioners' court, by virtue of the express provisions of the Constitution, creates the justice precinct, the governmental unit, having regard for the convenience of the people, in which the court must necessarily consider the question of, and ascertain, within reasonable limits, the population of the county, and of each precinct into which they may divide it. Until this is done, no justice of the peace can be elected or appointed; and the number to be ·elected or appointed depends, not only upon the number of precincts, but the existence in any of them of a city of 8000 or more inhabitants. The whole matter is, as heretofore stated, confided to the commissioners' court; and since the potential power to make the decree and finding at all times precludes the thought that the court must be governed by the United States census, it makes clearly inadmissible the doctrine of the Dulaney Case.

Section 18 of Article V of the Constitution, the provision before us for review, in part declares that the commissioners' court "shall exercise such powers and jurisdiction over county business as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." Under this provision and the statutes generally regulating commissioners' courts, these courts, when acting within the sphere of their powers, must be regarded as courts of general jurisdiction. Williams v. Ball, 52 Texas, 603, 609, 36 Ann. Rep., 730; Bradford v. Moseley, 223 S. W., 171, 173; Padgett v. Young County, 204 S. W., 1046, 1052; Busch & Co. v. Caufield. 135 S. W., 244, 245; Gaines v. Newbrough, 12 Texas Civ. App. 466, 34 S. W., 1048; Callaghan v. Salliway, 5 Texas Civ. App., 239, 23 S. W., 837; Vogt v. Bexar County, 16 Texas Civ. App., 567, 42 S. W., 127; School Trustees v. Farmer, 23 Texas Civ. App., 39, 56 S. W., 555.

Having authority to determine whether or not any justice precinct into which they may have divided the county contains 8000 or more inhabitants, the finding of the commissioners court as to that fact, in the absence of fraud, cannot be collaterally attacked. Authorities *supra;* Wright v. Jones, 14 Texas Civ. App., 423, 38 S. W., 249; 93 Texas, 678; Gaines v. Newbrough, 12 Texas Civ. App., 466, 34 S. W., 1048, 93 Texas, 660; State v. Goodwin, 69 Texas, 55, 5 S. W., 678; Ewing v. State, 81 Texas, 172, 178, 16 S. W., 872; Scarbrough v. Eubanks, 93 Texas, 106, 53 S. W., 573, 574; Thompson et al. v. State Ex rel. Donley, 23 Texas Civ. App., 370, 56 S. W., 603; Parker v. Harris County Drainage District, 148 S. W., 358, 360; McCormick v. Jester, 53 Texas Civ. App., 306, 115 S. W., 278, 287.

According to the certificate, appellee in his petition made no allegations of fraud, nor was there any proof of fraud on the trial

of the case. His attack on the judgment of the commissioners' court, is purely collateral, and cannot be maintained, as shown by the above authorities. But, granting that appellee could raise the issue as to whether or not there was a consideration of the question of population, and as to whether or not it was correctly or sufficiently proven, the record shows that the court did consider the subject of population, and that they considered it in a manner consistent with the fair exercise of the authority conferred upon them by the Constitution.

The information which the court acted upon, in so far as shown in this record, was plainly sufficient for them to act upon; and having so acted, even if upon appeal, their conclusion would not be revised. The commissioners were citizens of the county; they knew all matters of common knowledge with reference to Breckenridge; they made inquiry from reliable sources of information, and, clearly, could not shut their eyes to what everyone else knew. It is a matter of common knowledge, which even this Court judicially knows, that Breckenridge, previously but a thriving village, on the discovery of one of the great oil fields of the world adjacent to it, became, almost over night, a city. Courts can no more shut their eyes to general facts of current history than can other men. They must judicially know what all men commonly know. The commissioners court had judicial knowledge of what the census reports showed as to the population of Breckenridge at the time the census was taken, and they knew in the same way of the increase of population in Breckenridge since the previous census. Chamberlayne's Laws of Evidence, Vol. 1, §§ 731, 738, 792, 794, 795, 804, 806; 23 Corpus Juris, p. 163, § 1988; Salt Lake City v. Board of Education, 52 Utah, 540, 175 Pac., 654, 658; Times Printing Co. v. Star Pub. Co., 51 Wash., 667, 16 Ann. Cases, 414. 99 Pac., 1040; In re Board of Rapid Transit Comm'rs, 128 App. Div., 103, 112 N. Y. Suppl., 619, 636; State Ex rel. Crow v. Page, 107 Mo. App., 213, 80 S. W., 912; Ruckert v. Richter, 127 Mo. App., 664, 106 S. W., 1081. The Constitution does not define what evidence they shall consider, nor the extent of the information necessary to authorize them to act. They are not required to rely upon the census reports, but may ascertain the population as they would any other fact. State Ex rel. McBride v. Long, 17 Neb., 502, 23 N. W., 337, 338. In this case it was the duty of the mayor of any city which had ''attained a population of ten thousand inhabitants'' to ascertain and certify that fact to the governor for the purpose of having the city classified under the statutes. The contention was made that the census reports governed. The Supreme Court overruled this proposition, saying:

"It is very clear that the mayor of such a city is not required to rely upon the census taken under the statute, but may ascertain that fact in any other legitimate mode."

The judgment and discretion of the commissioners' court in the instant case having been exercised in good faith and without fraud, not arbitrarily, nor in gross abuse of discretion, there is nothing in the record which would warrant an annulment of the order, either upon collateral or direct attack.

If it be said the commissioners' court could not judicially know the exact population of Breckenridge, still, taking into consideration what they did judicially know, and the means of knowledge and investigation shown in the certificate, it is conclusive that when they acted they had sufficient facts before them to authorize the order which they entered. No principle of law is better settled than that acts of discretion and findings of fact on the part of public officers to which such power is confided, including commissioners' courts, will not be reviewed on appeal. 22 Ruling Case Law, pp. 490, 491; Word v. Schow, 29 Texas Civ. App., 120, 68 S. W., 192; State v. Goodwin, 69 Texas, 57, 5 S. W., 678; Ewing v. State, 81 Texas, 175, 16 S. W., 872; Foster v. Hare, 26 Texas Civ. App., 127, 62 S. W., 541; State v. Larkin, 41 Texas Civ. App., 253, 90 S. W., 912, 916; Scarbrough v. Eubank, 93 Texas, 106, 53 S. W., 573; and authorities *supra*.

Injunction was not the proper remedy for determining the legality of the acts and orders of the commissioners' court in issue here, nor the legality of the appointment of respondent to the office of justice of the peace. The attack made upon the appellant in the court below is shown in the certificate, and it is unnecessary to again set out the issues. The trial judge stated that he granted the injunction because it appeared that appellant had not been a resident citizen of Stephens County for six months prior to the date of his appointment as justice of the peace. The appellant at the time suit was filed and injunction issued had taken the oath of office, given bond, and was in the active discharge of the duties of his office. This renders inapplicable the injunctive relief provided for in Articles 3082, 3083, and 3083a of Vernon's Texas Statutes, 1922 Supplement, Acts of 1909, 36th Legislature.

The petition, considered in all its aspects, including its attack upon the eligibility of the appellant, must be held to be a suit for the purpose of trying the right of appellant to hold the office of justice of the peace. This makes quite a different case to that of Troilo v. Gittinger, 230 S. W., 233, relied on by appellee, where the party enjoined from trespassing upon the prerogatives of the public weigher was not an officer, and did not pretend to be one. Nor had appellant intruded himself into or interfered with appellee's office. If appel-

lant was not a justice of the peace, *de facto* or *de jure*, what he did or was doing was void. Whatever he did was as though nothing had been done. If he tried a case and collected the fees, it was as though there had been no trial and no fees paid, and did not prevent the same case and the same issues from being tried in appellee's court and the collection of legal fees by appellee. · Therefore, appellee showed no damages special to himself, and not common to the public at large. Under such circumstances he was not entitled to equitable relief. Lawson v. Baker, 220 S. W., 260, 265.

Appellant was at least a *de facto* officer, and as such was not subject to injunction. 22 Ruling Case Law, pp. 588, 454; Aulanier v. The Governor, 1 Texas, 653, 667; Broach v. Garth, 50 S'. W., 594; McAllen v. Rhodes, 65 Texas, 348, 353; San Antonio v. Strumberg, 70 Texas, 368, 7 S. W., 754.

While the purpose of the suit was in reality to determine appellant's right to the office involved, as well as the actual existence of the office, appellee made no claim to the office occupied by appellant. Such being the state of the case, if appellant was ineligible the exclusive remedy to prevent his usurpation or unlawful occupancy of the office was by *quo warranto*. Revised Statutes, Article 6398.

This suit, however, is not a *quo warranto* suit. In no event, under the authorities cited, would an injunction be the remedy in this case.

The commissioners' court, by a valid order, having determined that there was in Justice Precinct No. 1, of Stephens County, a city of over 8000 people, upon the official announcement of such fact, and the entry of the order, the office of an additional justice of the peace for the precinct, created by the Constitution, but awaiting the determination of fact by the commissioners' court (the agency designated by the Constitution for such purposes), came into being, and thenceforward was an existing office. Since the office came into existence and was not filled, it was vacant. 22 Ruling Case Law, pp. 437 et seq., 23 Amer. & Eng. Ency. of Law, 349; People v. Chaves, 122 Cal., 134, 54 Pac., 596; State v. Maloney, 92 Tenn., 62, 20 S. W., 419, 422; Stocking v. State, 7 Ind., 326; State v. McMillin, 108 Mo., 153, 18 S. W., 784; In the Matter of the 4th Judicial District, 4 Wyo., 133, 32 Pac., 850; In Re Collins, 16 Misc. 598, 40 N. Y. S'., 519. The commissioners' court, being the constitutional and statutory agency selected to fill vacancies, had authority to fill this vacancy. State Constitution, Article V, Section 28; Revised Statutes, Article 2288.

The questions certified are answered as follows:

The first question is answered in the affirmative; to the second we answer that the method pursued by the court, though not ex-

clusive, was a proper method, and that the determination and order of the court can not be collaterally attacked; the third is answered in the negative; and the fourth in the affirmative.