112 So.2d 843 (1959)
In re ADVISORY OPINION TO THE GOVERNOR.
Supreme Court of Florida.
June 12, 1959.
*844 PER CURIAM.

Supreme Court of Florida

Tallahassee

June 10, 1959
The Honorable LeRoy Collins
Governor of Florida
Tallahassee, Florida
Dear Governor:
We have the honor to acknowledge your letter of June 8, 1959, submitting to us under *845 Section 13 of Article IV of the Constitution of Florida a request for advice relating to your executive powers and duties. Your letter reads as follows:
"Honorable Glenn Terrell
Chief Justice and the Justices
 of the Supreme Court of Florida
Supreme Court Building
Tallahassee, Florida
"Gentlemen:
"Under Section 6, Article IV, of the State Constitution, I am directed to take care that the laws of this State are faithfully executed; and under Section 13 of said Article IV, I am authorized to request the written opinion of the Justices of the Supreme Court as to the interpretation of any portion of the State Constitution concerning any question affecting my executive duties and powers.
"On May 21, 1958, I was elected chairman of the National Governors' Conference, and will serve as chairman until August 5, 1959.
"The Governors' Conference has over the past 51 years been the official organization of chief executives of the American states, who convene annually to consider and discuss matters of mutual concern to the states and the office of governor.
"As chairman, my duties include not only presiding over the 1959 annual meeting but the chairmanship of the Conference executive committee of nine Governors, which transacts the business of the Conference between annual meetings.
"The executive committee on February 24, 1959, formally accepted the invitation of New York University to conduct a study of the equivalent of state governmental services and functions within the Soviet Union.
"The schedule calls for an inspection trip to Russia leaving around June 23 and returning around July 19. This would mean an absence from our State and from the United States of approximately 30 days.
"As chairman of the Conference and of the executive committee, it will be my responsibility to serve as chairman of this mission and to present its findings to the annual meeting of the Conference at San Juan, Puerto Rico, on August 3.
"While abroad, I will also be in my capacity as Governor of Florida and there represent the State of Florida and its citizens in matters which pertain to their interest, as is the case whenever I am absent from the State.
"While absent from the State or the United States, I shall at all times remain in personal control and supervision of the operation of the office of Governor through my administrative staff, which will from time to time be in direct communication with me and subject to my orders by telephone and telegraph.
"I shall, of course, remain always subject to prompt and immediate return to the office should the occasion demand.
"Since I have been serving as Governor I have been absent from the State on numerous occasions, and in the discharge of various responsibilities, but such absence has never resulted in any impairment of my ability to perform my official duties.
"To my knowledge there is no constitutional or statutory provision prescribing or conditioning the Governor's absence from his office. The Constitution does provide for the devolution of the powers and duties of Governor.
"Section 19 of Article IV states, `In case of the impeachment of the Governor, his removal from office, death, resignation or inability to discharge his official duties, the powers and duties of Governor shall devolve upon the President of the Senate for the residue of the term, or until the disability shall cease; * * *'
"I respectfully request your opinion on the following question:
"In view of the foregoing constitutional provision would my contemplated absence *846 from the State or the United States under the circumstances summarized constitute inability to discharge my official duties, or constitute any other cause for the devolution of the powers and duties of Governor?
 "Very sincerely,
 "/s/ LeRoy Collins
 "Governor"
It is to be first noted that Sec. 19, art. IV, Fla. Const., F.S.A., quoted in your request does not specify that the Governor's powers and duties shall devolve upon the President of the Senate in event of the Governor's absence from the state. The answer to your question is to be found in determining whether absence of the Governor from the state constitutes "inability to discharge his official duties" as provided in Sec. 19, art. IV.
This Court in State ex rel. Ayres v. Gray, Fla. 1953, 69 So.2d 187, 194, considered the intention of framers of the pertinent section saying:
"It is entirely clear that in framing Section 19, Article IV of the Constitution, the people apprehended that, in respect to the office of Governor, two situations might arise and that they intended that Section 19 of Article IV should take care of either situation. They plainly envisioned the possibility that during his term of office the Governor might be temporarily unable to discharge his official duties, because of illness or other debilitating influence. * * *" (Emphasis added.)
While that case is helpful to us we do not consider it to have settled the question now presented, since in that case the matter of the Governor's absence from the state was not specifically involved.
Having no prior expression of this Court on the specific question to guide us we have examined the provisions of each of the four constitutions adopted by the people of this state prior to the Constitution of 1885 in search of clues to the answer of your question.
There is respectable authority for our referring to our previous constitutions in our effort to ascertain the intent of the framers of the pertinent provision in the present one. Williams v. Castleman, 1922, 112 Tex. 193, 247 S.W. 263, 265; Newport News v. Woodward, 1905, 104 Va. 58, 51 S.E. 193, 7 Ann.Cas. 625; and 1 Cooley's Constitutional Limitations, p. 142 (8th ed. 1927).
Art. 3, Sec. 18 of the Constitution of 1838 provided that the President of the Senate should exercise the power and authority appertaining to the office of Governor "in case of the impeachment of the Governor, his removal from office, death, refusal to qualify, resignation, or absence from the State." 25 F.S.A. The Senate President was authorized to so act "till the Governor absent, or impeached, shall return, or be acquitted." Similar wording was used in Sec. 19 of that article providing for the speaker of the house to assume the duties when the senate president was impeached, removed from office, died, refused to qualify, resigned, or was absent from the state.
In the Constitution of 1861, art. 3, Sections 18 and 19 were the same as in the Constitution of 1838.
In the Constitution of 1865, art. 3, Sec. 19 provided, among other things, that if the governor be absent from the state a lieutenant governor would exercise his power and authority, until the governor should return. Sec. 20 provided for the contingency of both the governor and lieutenant governor being absent from the state.
The Constitution of 1868, art. 5, Sec. 15 called for the lieutenant governor to exercise the powers and authority of the governor "in the case of the impeachment of the Governor, or his removal from office, death, inability to discharge his official duties, or resignation" for the residue of the term "or until the disability shall cease." The section contained an additional phrase as follows: "but the Governor *847 shall not, without the consent of the Legislature, be out of the State in time of war." It is significant to note that Sec. 14, Article 5 of the 1868 Constitution provided that the President pro tem. of the Senate should act as Governor during a vacancy in the office of Governor if the lieutenant-governor "be absent from the State."
The present provision, it is noted, contains the identical causes for the devolution of the Governor's powers and duties upon the President of the Senate as were causes for such devolution upon the lieutenant governor under the 1868 Constitution: impeachment, removal, resignation, death, and inability to discharge official duties. Neither the present provision nor that in the 1868 Constitution include the term "absence from the State" of the Governor which had been formerly used, although it was used in the 1868 Constitution in regard to causes for devolution of the duties of Governor on the President pro tem. of the Senate in the absence of the lieutenant-governor.
The Constitutions of 1868 and 1885 and those of 1838, 1861, and 1865 each included the terms impeachment, removal, death, and resignation. The first three Constitutions, those of 1838, 1861 and 1865, in addition included the terms "refusal to qualify" and "absence from the State." Therefore, the two Constitutions last enacted in effect omitted the two terms "refusal to qualify" and "absence from the State" as causes for devolution and adopted the new cause "inability to discharge his official duties." The question then arises whether the new term was meant to include the formerly, specifically mentioned cause "absence from the State." It is our opinion it was not.
The last two enacted Constitutions dropped the term "absence from the State," as applied to the Governor. It has been said that a corollary to the rule that the construction of an old Constitution still applies to a new Constitution if the wording is the same is that where a word in an amendment or reenactment of a Constitution is omitted, the omission should be presumed to have been intentional. 11 Am.Jur., Constitutional Law, Sec. 67; Sherill v. O'Brien, 1907, 188 N.Y. 185, 81 N.E. 124, 117 Am. St.Rep. 841. We are of the view that the framers of the Constitutions of 1868 and 1885 deliberately dropped the absence of the Governor from the state as a cause for the devolution of his powers and duties. This conclusion is strengthened by the observation that in art. 3, Sec. 19 of the Constitution of 1868 the Governor was precluded from leaving the state, without consent of the legislature, in time of war, thus implying both that in time of peace he could leave without consent and that his mere absence from the state would not devolve the powers and duties of his office upon another as acting governor.
We are of the view that the word "inability" which in its ordinary sense means the state of being unable, lack of ability, lack of capacity or power does not include within its meaning the word "absence."
A similar conclusion was reached in the case of In re Munger, 1896, 10 App. Div. 347, 41 N.Y.S. 882, 884, although the case actually concerned the absence of a judge. There the court noted that in relation to the governor, the code provided that his duties and powers would devolve in case of the impeachment of the governor, his removal from office, death, inability to discharge the powers and duties of his office, resignation, or absence from the state. The court said:
"* * * Here the term `inability,' which is certainly as broad in its meaning as `incapacity,' was evidently not regarded as broad enough to embrace `absence.'"
While we recognize that mere absence from the state does not of itself necessarily produce inability of a Governor to discharge his official duties, we simultaneously realize that the nature of the conditions attendant upon such absence *848 could possibly constitute inability such as would justify a devolution of the powers and duties of the office.
The Constitutions of several states specifically provide, as ours once did, that "absence from the State" of the Governor is cause for devolution of the powers and duties of the office to an acting governor. However, even under those provisions it is not universally held that every absence brings on such devolution. See Note, 35 American & English Annotated Cases (Ann.Cas. 1915A), p. 577; In re An Act Concerning Alcoholic Beverages, 1943, 130 N.J.L. 123, 31 A.2d 837. In the latter case the court, at 31 A.2d at page 841 said:
"Under the first view, notwithstanding modern facilities of communication and transportation, the governor would be absent from the state if he were but to leave it long enough to go to New York or Philadelphia for part of a day or evening to attend a public or private function.
"It is not reasonable to adopt so narrow and strict construction or interpretation of the word `absence.' We think that the other view which is made to depend upon the particular facts and circumstances of each `absence' from the state by the governor comprehends the common sense idea of the word `absence' as used in the constitution. We adopt it. * * *"
We must therefore consider the circumstances surrounding your contemplated absence.
In your request, above copied, you state that even though you will be out of the state you will nevertheless be in frequent direct communication with your administrative staff by telephone and telegraph, that your staff will continue to act under your direction, and that you will be subject to prompt and immediate return to your office should the occasion demand.
Under the facts and circumstances outlined in your request, we are of the opinion that your proposed absence will not constitute inability to discharge your official duties or constitute any other cause for the devolution of the powers and duties of the office of Governor.
Accordingly your question is answered in the negative.
 Respectfully,
 GLENN TERRELL, Chief Justice
 T. FRANK HOBSON
 B.K. ROBERTS
 CAMPBELL THORNAL
 STEPHEN C. O'CONNELL, Justices.