

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

December 10, 1965

Honorable Frank Stovall          Opinion No. C-566
District Attorney
64th Judicial District     Re:   Status of the office of
Courthouse                       Justice of the Peace,
Plainview, Texas                 Precinct No. 1, Place No. 2,
                                 Hale County, Texas.

Dear Sir:

        Your request for an opinion of this office reads as
follows:

        "The Commissioners Court in Hale County, Texas
    has requested that I write you, seeking your opinion
    concerning a Justice of the Peace election held in
    the general election of November, 1964.  A more
    formal and detailed fact statement is attached to
    this letter.  However, briefly stating, a Mr. R. A.
    Vernon, a write-in candidate, was elected to the
    office of Justice of the Peace, Precinct No. 1,
    Place No. 2, in the general election held in
    November, 1964.  Thereafter, Mr. Vernon requested
    that the Hale County Commissioners Court give
    sanction to this office, and ask for a clarification
    of his duties and responsibilities.  Mr. Vernon
    feels that such office is in existence and that he
    is officially entitled to the same, by reason of
    Section 18, Art. 5 of the Constitution, and Art.
    2375, Revised Civil Statutes.  Notwithstanding
    the Hale County Commissioners Court feels that
    since there is already a Justice of the Peace
    serving this particular precinct, there is no
    necessity for a second Justice of the Peace and
    that to sanction such office would not be to the
    public interest.

        "This situation has given rise to the following
    questions and problems which invite your opinion
    and clarification, to-wit:

-2730-

"1. Did such an office as Justice of the Peace, Precinct No. 1, Place No. 2 exist at the time of the general election in November, 1964?

"2. Does such an office exist now, and if so, is R. A. Vernon the duly elected and qualified office holder?

"3. Assuming that such office is in existence and R. A. Vernon is the holder thereof, then what is the responsibility of the Hale County Commissioners Court insofar as paying Mr. Vernon a salary, providing him with office facilities in the court house or otherwise, and how should his official duties be commingled with the currently existing Justice of the Peace?"

Article V, Section 18 of the Texas Constitution provides:

"Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more than eight. Divisions shall be made by the Commissioners Court provided for by this Constitution. In each such precinct there shall be elected one Justice of the Peace and one Constable, each of whom shall hold his office for four years and until his successor shall be elected and qualified; provided that in any precinct in which there may be a city of 8,000 or more inhabitants, there shall be elected two Justices of the Peace. * * *"

Article 2375, Texas Revised Civil Statutes, reads:

"Where there is a city of eight thousand inhabitants or more in a justice precinct, two justices of the peace shall be elected."

Supplementing the facts stated above, we have been furnished with the following additional facts. Hale County is divided into four justice of the peace precincts, and Precinct No. 1 contains all of the City of Plainview. The federal censuses of 1930, 1940, 1950, and 1960 each has shown Plainview as having a population of more than 8,000, the 1960 population being 18,735. The Commissioners Court of Hale County has never entered an order declaring that Plainview has a population of more than 8,000, or declaring the office of Justice of the Peace, Precinct No. 1, Place No. 2, to be in existence. Neither has it ever made a finding that the population of Plainview has decreased since 1960 or that the city does not in fact contain in excess of 8,000 inhabitants. Prior to 1964, a Justice of the Peace for Place No. 2 had never been elected or appointed.

In the Republican primary of 1964, a nomination was made for Justice of the Peace, Precinct No. 1, Place No. 2, and was certified to the County Clerk of Hale County. No candidate was certified for that office by any other political party. The office was listed on the general election ballot for 1964 under the Republican Party column, together with the name of the Republican nominee, and was also listed in the write-in column. In the general election, R. A. Vernon, running as a write-in candidate, received 2337 votes and the Republican nominee received 1366 votes for the office. The Commissioners Court listed the office and the number of votes cast for each of the candidates on its report of the official canvass of the election. On January 1, 1965, Mr. Vernon took the oath of office and made bond, and the bond and oath were recorded in the office of the County Clerk of Hale County on January 5, 1965. However, the County Judge of Hale County has never issued a certificate of election to Mr. Vernon, and has never reported his name to the Secretary of State as having qualified for the office.

In Attorney General's Opinion No. O-2847 (1940), the question presented was whether it was mandatory on the commissioners court to recognize the fact that a city wholly within a justice precinct had more than 8,000 inhabitants, according to the most recent federal census, and to provide for the

election, or to appoint, a second justice of the peace for that precinct. In response to this question, the opinion held:

> "We believe that the provisions of the Constitution above quoted and Article 2375, Vernon's Annotated Civil Statutes, providing 'Where there is a city of 8,000 inhabitants or more in a justice precinct, two Justices of the Peace shall be elected' is mandatory and cannot agree with your conclusion that these provisions are directory only. Therefore, you are respectfully advised that it is the opinion of this Department that where a city is located in a justice precinct and has a population of 8,000 inhabitants or more as shown by the last preceding Federal census, as in the instant case, it is mandatory that the commissioners court appoint another Justice of the Peace for such precinct, unless the commissioners should determine and find as a matter of fact that since the first day of April, 1940, the date as of which the last Federal Census was taken, the population of the city had decreased and has now a population of less than 8,000 inhabitants."

In support of this holding, the opinion quoted from the case of Williams v. Castleman, 112 Tex. 193, 247 S.W. 263 (1922), which will be discussed later in this opinion.

In 1953, the Court of Civil Appeals handed down an opinion in Meredith v. Sharp, 256 S.W.2d 870 (Tex.Civ.App. 1953, error ref. n.r.e., 152 Tex. 437, 259 S.W.2d 172), which held that the creation of an additional justice court in a precinct containing a city over 8,000 was not mandatory, but was within the discretion of the commissioners court upon its determination as to whether the second office was needed "for the convenience of the people." The reasoning of the Court of Civil Appeals was stated as follows:

> "We are in accord with the conclusions of law as filed by the trial court that the 'Constitution confides in the Commissioners' Court the authority

to create a justice of the peace court as here sought; that the convenience of the people is the basic purpose for designating such an additional justice court; and that the creation of such an additional justice of the peace court is a discretionary act of the Commissioners' Court and not a ministerial function of such court.' This record is absent any showing or any attempt to show that the creation of such an additional justice court would be for the convenience of the people. The action of the trial court in denying this application for a writ of mandamus is sustained.

"We cannot escape the import of the use of the term 'for the convenience of the people' in Sec. 18, supra; 16 C.J.S., Constitutional Law, Sec. 23. The latitude so granted the Commissioners' Court to create not less than four and not more than eight such precincts, and the power to change the boundaries of such precincts from time to time emphasizes the intent to vest discretionary powers in the Commissioners' Court in determining whether or not the creation of such additional court would be for the convenience of the people, that is, suitable, appropriate or advisable to meet the needs of the people. This discretionary power on the part of the Commissioners' Court is fully recognized in Williams v. Castleman, 112 Tex. 193, 247 S.W. 263, * * *."

The Meredith case arose as a mandamus proceeding against the Commissioners Court of Gregg County, brought by a "resident citizen, taxpayer and voter" in the justice precinct in Gregg County containing the city of Longview, which according to the undisputed evidence had a population in excess of 8,000, to compel the Commissioners Court to create the office of Justice of the Peace, Place No. 2 for that precinct. Upon application for writ of error, the Supreme Court of Texas stamped the application "Refused. No Reversible Error," with the following explanation for its action:

"Under our view petitioner has no interest, financially or otherwise, which would authorize him to maintain this suit. Yett v. Cook, 115 Tex. 205, 281 S.W. 837. The trial court should therefore have dismissed the suit rather than deny the writ, but since the practical effect of the two orders is the same, no purpose would be served in granting the writ to reform the judgment. The application is therefore stamped Refused. No Reversible Error."

Since, according to the Supreme Court's action, the Court of Civil Appeals should not have taken jurisdiction of the case for the purpose of ruling on the merits of the plaintiff's contention, its opinion cannot be looked upon as precedent for the proposition that creation of the second office of justice of the peace is discretionary with the commissioners court. However, the fact that the Court of Civil Appeals had relied on the Supreme Court's opinion in Williams v. Castleman, the same authority on which the Attorney General had relied in Opinion No. O-2847, and had reached a contrary result, pointed up the desirability of reviewing the holding in Opinion O-2847, and of again analyzing the opinion in the Williams case.

In Williams v. Castleman, the Commissioners Court of Stephens County in 1921 had entered an order which (1) declared that the city of Breckenridge, located in justice precinct No. 1, was a city of over 8,000 population; (2) adjudged that another justice court was necessary in the precinct, and (3) created another justice court for the precinct, designating it as Place No. 2. The order recited that the administration of the law in the county and the service of the people of the precinct demanded and required the erection of the additional court. The commissioners court appointed a justice for the new court, who qualified in the manner required by law and entered upon the active discharge of the duties of the office. Shortly afterward, the justice of the peace for precinct No. 1 who had been elected in 1920 brought an action against the appointee for injunction, alleging among other things that the office to which the defendant had been appointed did not lawfully exist because the federal census for 1920 showed Breckenridge as

having a population of only 1,846 inhabitants and the commissioners court was not authorized to determine the population on any basis other than the number of inhabitants as shown by the federal census.

The case reached the Supreme Court on questions certified to it by the Court of Civil Appeals, the first two of which were as follows:

"(1) Were the commissioners' court of Stephens county authorized under the law and Constitution to create the office of justice of the peace, precinct No. 1, place No. 2?

"(2) If they were so authorized, did they follow the proper method of determining the population of Breckenridge, and can that determination and order be collaterally attacked?"

The Supreme Court answered the first question in the affirmative, and answered the second question by stating that the method pursued by the commissioners court, though not exclusive, was a proper method, and that the determination and order of the court could not be collaterally attacked. After stating that it was a matter of common knowledge that Breckenridge, previously but a thriving village, on the discovery of one of the great oil fields of the world adjacent to it became a city almost overnight, the Court held that the commissioners court was not required to rely on the census reports but could ascertain the population as they would any other fact. 247 S.W. at p. 269.

In reaching its holdings, the Supreme Court traced the history of Article V, Section 18 of the present Constitution, from which the Court drew two conclusions (247 S.W. at p. 266):

(1) That from the beginning the dominant constitutional purpose has been to divide the county into justice precincts "for the convenience of the people."

(2)   That the change from those provisions
of previous Constitutions which left the number
of the justices of the peace or justice precincts
to the determination of the Legislature, to the
language of Article V, Section 18 of the present
Constitution, "wherein the number of justice pre-
cincts is confided to the limited discretion of
local authorities, was the result, not of any
fortuitous circumstance, but of experience."

From these conclusions, the Court made the following
observations:

"The purpose to leave this determination to
local authorities, having been reached from
experience and mature consideration, must also
be given a controlling effect in the interpre-
tation and construction of this section of the
Constitution.

"The fact that * * * the commissioners'
court /was/ selected as the constitutional agency
to divide the county into justice precincts
evidences a specific purpose to remove the en-
tire subject from the domain of state action,
except such reasonable legislative action as
might be convenient to render the exercise of
the power more effective and uniform."

On the basis of this statement, we believe Article
2375 of the Revised Civil Statutes cannot be given any weight
in determining the question at hand, because the subject has
been removed from the domain of legislative action by the Con-
stitution. We must look solely to the Constitution, as con-
strued by the Supreme Court, for guidance.

It is clear that the commissioners court is invested
with discretionary power to determine the number of justice pre-
cincts, within the limits stated in the Constitution, and that
"the convenience of the people" is the criterion for the exer-
cise of that discretion. The following quotation from the
opinion in Williams v. Castleman indicates that the Supreme

Court considered the proviso concerning the number of justices in a precinct containing a city of 8,000 or more inhabitants as being subject to a similar discretion based upon the same criterion:

> "It is plain from section 18, art. 5, of the Constitution that its prime purpose in not fixing definitely the number of justice precincts in any county, and the number of justices in any particular precinct, was, as it states, 'the convenience of the people'; that is, to give the commissioners' court some discretion so that the number of precincts may be made to meet the changing needs of the people.
>
> "The object of the Constitution in providing for two justices of the peace in precincts containing 8,000 or more inhabitants is the same as that declared in the previous paragraph of the same section—that is, for the convenience of the people. No method of determining the population is given in this section or elsewhere in the Constitution. The determination of the population by some authority is necessary to set in motion the process by which two justices are to be elected, or a vacancy in the office filled by appointment. The Constitution contains no express direction, either to the electorate or to the appointive power, as to how or when this question of population is to be determined, nor is any provision made in the statutes therefor. * * * But legislation was not necessary to enable the commissioners' court to exercise any of the powers given in this provision of the Constitution." 247 S.W. at p. 267. (Emphasis added throughout.)

Further on in the opinion, the Court said that "we believe that the entire subject is confided to the commissioners' court, and that the court of any particular county is empowered to divide it into precincts, and to designate or afterwards determine which of those precincts contains cities of 8,000 or

more inhabitants."  247 S.W. at p. 268.

The Court summarized its views in the following statement, upon which Opinion O-2847 relied:

"The commissioners' court, by a valid order, having determined that there was in justice precinct No. 1 of Stephens county, a city of over 8,000 people, upon the official announcement of such fact, and the entry of the order, the office of an additional justice of the peace for the precinct, created by the Constitution, but awaiting the determination of fact by the commissioners' court (the agency designated by the Constitution for such purpose), came into being, and thenceforward was an existing office. * * *"  247 S.W. at p. 270.

Taking the opinion as a whole, we believe the Court was saying that the matter of whether there were to be two justices in a precinct containing a city of 8,000 or more inhabitants was confided to the discretion of the commissioners court.  The Constitution had created the second office in the sense that it had made provision whereby the office could be brought into being, but the office would not actually exist unless and until the commissioners court made an official determination of the facts necessary to activate the proviso, namely, that the precinct contained a city of 8,000 or more inhabitants and that the second office was needed for the convenience of the people.

Attorney General's Opinion No. WW-1251 (1962) followed the holding of the Court of Civil Appeals in Meredith v. Sharp and overruled the earlier Opinion No. O-2847.  It might appear that Opinion No. WW-1251 was based on the assumption that the Court of Civil Appeals opinion was a controlling precedent, rather than upon a reconsideration of the soundness of Opinion No. O-2847.  In any event, we now hold that under the terms of Article V, Section 18 of the Constitution, as construed by the Supreme Court in Williams v. Castleman, the second office of justice of the peace in a precinct containing a city of 8,000 or more inhabitants does not come into existence unless and

until the commissioners court has so declared. Since the commissioners court has not entered an order to that effect with respect to Precinct No. 1 of Hale County, the office of justice of the peace, Place No. 2 for that precinct has never come into being and the attempted election to fill the nonexistent office was a nullity.

The fact that the office was listed on the 1964 general election ballot cannot operate as an implied finding by the commissioners court that the office was in existence, because the commissioners court had nothing to do with making up the ballot for the election. Neither can any such effect be given to the fact that the commissioners court listed the votes cast for the office on its official record of canvass, because the court was acting in a ministerial capacity in making the canvass, and had no discretion to exclude votes reported on the official returns of the precinct election judges. Ferguson v. Huggins, 122 Tex. 95, 52 S.W.2d 904 (1932).

Your first and second questions are answered in the negative. In view of our holding on these questions, it is unnecessary to answer your third question.

## SUMMARY

Under the terms of Article V, Section 18 of the Texas Constitution, as construed in Williams v. Castleman, 112 Tex. 193, 247 S.W. 263 (1922), the office of justice of the peace, place No. 2, in a precinct containing a city of 8,000 or more inhabitants does not come into existence unless and until the commissioners court has declared that the precinct contains a city of 8,000 or more inhabitants and that the second office is needed for the convenience of the people.

Yours very truly,

WAGGONER CARR
Attorney General

By: *Mary K. Wall*

Mary K. Wall
Assistant

MKW:ra

APPROVED:
OPINION COMMITTEE

W. O. Shultz, Chairman
John Reeves
Phillip Crawford
Robert Owen
Robert Flowers

APPROVED FOR THE ATTORNEY GENERAL
By:  T. B. Wright