Delivered January 16, 1891.

---

## San Antonio & Aransas Pass Railway Company v. The State of Texas.

### No. 2921.

1. **County Attorney May Sue for Forfeiture.**—By Act of April 8, 1889, amending article 4238, Revised Statutes, imposing certain forfeitures, it is provided that "it shall be the duty of the Attorney-General, or the district or county attorney of the district or county in which said crossing or depot is situated, to sue, prosecute for, and recover the same." When a duty is thus imposed upon an officer it can not be said that it was not the intention of the Legislature that he should have the power to perform it.

2. **Same—County Attorney.**—The act in question prescribes who shall institute and prosecute this particular class of actions, without reference to what court, in the given case, it may be necessary to resort to; and as the Legislature has not placed a limit on the duty of a county attorney founded on the jurisdiction of the court in which it may be necessary to sue, it can not be presumed that it intended any such limitation of power or duty should exist. The other statutes defining the relations of the district and county attorneys do not control this act.

3. **Constitutional Limitation.**—Article 10, section 1, of the Constitution of the State provides: "Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad; and it shall receive and transport each the other's passengers, tonnage, and cars, loaded or empty, without delay, under such

regulations as shall be prescribed by law." The regulations to be prescribed by law for the purpose of carrying out the provisions of this section of the Constitution may with propriety extend to just such matters as are embraced in the act imposing forfeitures upon railway companies failing to erect depots at the point of intersection with another road, where the site is practicable and the crossing not within five miles of a town in which is a union depot kept by such roads.

4. **Same — Construction.** — A command in the Constitution to the Legislature to pass laws on a given subject can not be understood to operate as a prohibition to enact laws upon another, and in the absence of such prohibition in the Constitution of the State or the United States it is understood that a State Legislature has power to pass all such laws as may be deemed necessary for the public welfare. The section 2 of article 10 of the Constitution, therefore, in imposing certain legislation touching railways, did not operate to forbid legislation upon the subject of litigation herein.

5. **Same.**—But if the matter remedied by the act was an abuse of duty on the part of the railways, the legislation might properly be classed as within the provisions of the section 2 of article 10 of the Constitution.

6. **Union Depot.**—The intersection of the roads was within less than five miles of the town of Flatonia. The two roads maintain each a depot in the town suited for the convenience of the inhabitants, but about 740 feet apart. The depot of the defendant company was established where it is at the instance of the people of the town. Both were made before the passage of the act. *Held*, that such facts did not constitute a substantial compliance with the condition in the statute for a union depot excusing the erection of one at the crossing.

7. **Same.**—Such facts could not supply the wants of the general traveling public, however well suited for the convenience of the inhabitants of the town.

8. **Same.**—That the depot had been built before the passage of the act requiring railways to provide depot accommodations at intersections of their roads will not excuse a disregard of the statute or relieve them of the penalty fixed for such neglect.

APPEAL from Fayette. Tried below before Hon. H. Teichmueller.

This is an appeal from a judgment for $7000 in favor of the State of Texas and against the San Antonio & Aransas Pass Railway Company.

The suit was brought by the county attorney under article 4238, Revised Statutes, as amended April 8, 1889. The act is set out in the opinion.

Suit was to recover the penalty, $25 a day, for failure to establish a depot at the crossing of defendant's railroad with the Galveston, Harrisburg & San Antonio Railroad, which crossing was less than five miles from the town of Flatonia, and that no union depot was there established.

The defendant pleaded: 1. That the suit was not legally instituted, for that the county attorney had no power to bring the suit. 2. That the law under which the penalty was claimed was unconstitutional. 3. That before the enactment of the law defendant had established sufficient depots near the said intersection at the most convenient point for the public; that each of said railroad companies has a depot in the town of Flatonia, well situated and sufficient, but they are about 130 yards apart, and that to move them would produce great inconvenience and incur great expense.

The case was tried by the judge without a jury. Findings of facts are

given in the opinion.   The defendant appealed.   There is no question of pleadings.   The opinion *contains a statement of the facts.*

*S. C. Patten,* for appellant.— 1.   Under the statutes county attorneys have no authority to officially represent the State in the District Court except in the absence of the district attorney, or to assist him (he being present and requesting the same), and the act of the Twenty-first Legislature authorizing them to institute suits against railways for failing to build and maintain depots at points of intersection does not extend their jurisdiction to the District Court.

2.   In the interpretation of statutes, if there be a number on the same subject, in order to arrive at their true meaning they must be construed together and so as not to repeal any one of them if their language will admit of it.   Sayles' Civ. Stats., arts. 247a, 4238; Code Crim. Proc., art. 33.

3.   The Legislature by the Constitution of the State has been prohibited from the enactment of any law requiring the construction of depots at points of intersection by railways and the enforcement of same by penalties, by defining its powers on said subject and omitting this.   Holley v. The State, 14 Texas Ct. App., 516, and authorities.

4.   If we concede that article 4238, Revised Statutes, is a police regulation within the limitation of section 1, article 10, which authorizes the Legislature to prescribe by law regulations for the transportation of each other's freight and passengers by railroads without delay or discrimination, a compliance with the spirit of the regulation as expressed in the limitations of the Constitution would be a satisfaction of the law.

5.   The statutory laws under which appellant's road was constructed and its depots built embodied the terms of a contract between appellant and the State, and the act requiring the removal of the same at the expense of appellant impaired the obligation of said contract.   No person's property shall be damaged or applied to public use without adequate compensation having been first made.   Const., art. 1, secs. 16, 17.

*George Willrich* and *R. H. Phelps,* for the State.— 1.   Where the statute itself gives authority to an officer to institute legal proceedings, that is all and the very highest authority he needs.

2.   The Legislature had full power and authority under the Constitution to enact the law under consideration and to cause railroads to have and maintain such depots and accommodations at the intersection of their own with other roads as are necessary for the comfort and convenience of the traveling public and for the safety and protection of their baggage and other property.   Const., art. 10, sec. 1.

3.   The court below did not err in its conclusions of law in construing article 4238, and said construction was the only legal one which could be given said article.   Nor did it err in rendering judgment against defendant.

4.   The act in question does not require the removal of any one of appellant's depots, nor does its enforcement impair the obligation of any contract existing between the State and appellant.

STAYTON, CHIEF JUSTICE.—This action was brought in behalf of the State of Texas by the county attorney for Fayette County to recover the penalty prescribed by an act approved April 8, 1889.   Gen. Laws, p. 19.

The petition alleged that the railway company had failed to erect, build, or maintain, either separately or in common with the Galveston, Harrisburg & San Antonio Railway Company, in parts of the road styled the Southern Pacific, a depot either for passengers or freight at the point where those two railways intersected, and it contained averment of the facts. made necessary by that act to entitle the State to recover the penalty therein prescribed.

That act is as follows:   "The point at which two roads cross or intersect each other is declared to be a depot for the receipt of freight and passengers:   *Provided,* that this act shall not apply to crossings or intersections in or adjacent to cities and towns where a union depot is established; and it shall be the duty of each and every railroad company at each of such crossings of its road with another railroad in this State, not in or within five miles of any city or town where a union depot is established or where it is impracticable to establish a union depot, where the character of the land and grade of the road at such crossing will admit of the same, to erect, build, and maintain, either jointly with the railroad company whose road is so crossed or separately by each railroad company, a depot or passenger house with room or rooms sufficient to comfortably accommodate all passengers awaiting the arrival and departure of trains from such junction or railroad crossing; and each and every railroad company shall keep its depot or passenger house in this State lighted and warmed and open to the ingress and egress of all passengers a reasonable time before the arrival and after the departure of all trains carrying passengers on such railroad or both of such railroads, if at a crossing.   Each and every railroad company which shall fail, neglect, or refuse to comply with any provision of this section shall for each day of any such failure, neglect, or refusal after this act takes effect forfeit and pay the sum of $25, which may be recovered by and in the name of the State of Texas; and it shall be the duty of the Attorney-General or the district or county attorney of the district or county in which said crossing or depot is situated to sue, prosecute for, and recover the same."

The sufficiency of the petition is not questioned if the statute be valid, but it is contended that the act is in excess of legislative power if not in violation of the Constitution; and further, that even under the act the county attorney had no power to institute and maintain the action.

The act in express terms makes it the duty of either of the three officers named to institute such actions, to prosecute them to judgment, and to recover the penalty prescribed.

When a duty is thus imposed upon an officer it can not be said that it was not the intention of the Legislature that he should have the power to perform it.

The argument, however, is that as under other laws prescribing generally the duties of district and county attorneys it is made the duty of the former to represent the State in all actions in the District Courts of the district for which he may be elected, the same rule must be applied under the statute in question, and that for this reason the county attorney, there being a district attorney for the district in which Fayette County is situated, had no power to institute or prosecute this action.

The answer to this is that the act in question expressly imposes the duty upon a county attorney as fully as does it upon the district attorney or Attorney-General, and it is not for the courts to declare that the Legislature did not intend to clothe the county attorney with such a power when it becomes necessary to institute and prosecute such an action in a District as well as in some inferior-court, simply because in some other cases district attorneys are made the representatives of the State in other actions to be instituted and prosecuted in District Courts.

The act in question prescribes who shall institute and prosecute this particular class of actions, without reference to what court in the given case it may be necessary to resort; and as the Legislature has not placed a limit on the duty of a county attorney founded on the jurisdiction of the court in which it may be necessary to sue, it can not be presumed that it intended any such limitation of duty or power should exist.

It seems to be contended that the act in question is in violation of sections 1 and 2 of article 10 of the Constitution.

The first of these provides that "Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad; and it shall receive and transport each the other's passengers, tonnage, and cars, loaded or empty, without delay or discrimination, under such regulations as shall be prescribed by law."

The purpose of this section is to confer a right on railway companies, but it at the same time imposes duties to be performed "under such regulations as shall be prescribed by law."

These duties are to receive and transport each the other's passengers and cars, loaded or empty, without delay or discrimination.

The regulations prescribed by law for the purpose of carrying out the provisions of this section of the Constitution may with propriety extend to just such matters as are embraced in the act in question.

Regulations looking to the securing of facilities in travel and to easy transfer from one road to another crossing or intersecting road, and to se-

curing a place to shelter passengers while waiting transit from one road to the other, seem to be in entire harmony with both the spirit and letter of this section of the Constitution.

The laws in force in this State since February 7, 1854, have required railroads to receive and transport freights and passengers at the places where they may cross or intersect other roads (Revised Statutes, articles 4226, 4238), and the act in question simply prescribes more fully than did former laws what accommodations shall be furnished at such places.

Section 2, article 10, provides that "The Legislature shall pass laws to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this State; and shall from time to time pass laws establishing reasonable maximum rates of charges for the transportation of passengers and freight on said railroads, and enforce all such laws by adequate penalties."

It seems to be contended that this section operates as a limitation on the power of the Legislature, which took from it the power to enact the law in question. There is nothing in the language of this section indicating an intention to limit the power of the Legislature; but, on the contrary, the intention seems to have been to make it incumbent on that department of the government to pass such laws as might be necessary to carry out the purposes suggested in it.

A command in the Constitution to the Legislature to pass laws on a given subject can not be understood to operate as a prohibition to enact laws upon another; and in the absence of some prohibition in the Constitution of the State or of the United States, it is understood that a State Legislature has power to pass all such laws as may be deemed necessary for public welfare or the protection of private right.

If, however, the Legislature deemed the failure of a railway company to provide suitable accommodations for passengers and freight at places where the law requires them to receive and discharge, an abuse of duty to the public, we do not see that this would be any perversion of the spirit or letter of the section in question, or that under the command contained in it, it would not be the duty of the Legislature to pass such a law as that in question and to enforce it by adequate penalties.

It is contended that the court erred in holding that appellant had not complied substantially with the act in question.

The court's findings of fact are not questioned, and are as follows: "1. That the character of the land and grade of the roads at the crossing of defendant's road and the Southern Pacific Railroad at Flatonia will permit the construction of a depot at said point, and that said crossing is not within five miles of any city or town where there is a union depot established.

"2. That said company, viz., defendant, and the Southern Pacific Railway maintain depots for passengers and freights in the centre of the busi-

ness portion of the town of Flatonia and at points most convenient for the large majority of those dealing with said roads, about 740 feet apart, which were erected respectively, viz., the defendant's in November, A. D. 1887, and the Southern Pacific five or six years prior thereto.

"3.   That defendant's depot was established at the instance of and for the convenience of the people of Flatonia.

"4.   That defendant owns the lot upon which its said depot is established, and that to remove the said depot therefrom to the point of intersection or to erect an additional one there would materially damage the value of said lot, besides costing defendant at least $300 or $400, and also damage the property belonging to a large number of citizens of said town.

"5.   That the population of Flatonia is about 1200 or 1500, and that there is no business transacted about the point of intersection, but that the present site of depot is centre of same.   That the depots of defendant and Southern Pacific Railway Company as now located are, viz., defendant's about 2750 feet from point of intersection of roads, and Southern Pacific is about 2500 feet.

"6.   That neither the defendant or Southern Pacific Railway Company have erected depots at point of intersection."

These findings show that the place where the roads cross is such that such buildings as are required by the act might be there erected and maintained, and further that the point of intersection is not within five miles of any city or town where a union depot is established for the roads named; and there is no evidence tending to show that it would be impracticable to established a union depot at the town of Flatonia.

These facts, coupled with the fact that neither of the railway companies has erected at the point of intersection, for common use, such building as the act prescribes, fixes liability, unless it be true that there has been a substantial compliance with the law.

In order to determine whether there has been a substantial compliance it only becomes necessary to look to the purposes of the act.

If it had been intended to secure through the act only the convenience of the residents of a town situated as is the town of Flatonia with reference to the point of intersection, it might probably be held that this had been substantially accomplished, for such persons could ordinarily reach their homes or places of business as conveniently from the depot of the road on which they might arrive as from the point of intersection, and the same would be true as to those who might seek to take passage on the one or the other road without traveling at all upon the other.

The facts shown, however, would not constitute a substantial compliance with the law as to persons who might on account of the nearness of residence or place of business to the point of intersection desire at that point to leave or take passage on the train of either road.

One of the leading purposes of the act, however, probably was to secure

the convenience of those who arriving at the point of intersection on one road might desire, in continuation of their journey, there to take passage on the other; and from the situation of the depots of the respective roads it is evident that this can not be done from there without inconvenience and expense which it would not be necessary to incur were there such a depot as the act contemplates maintained at point of intersection.

This matter is well illustrated by the evidence of a witness, who testified as follows: "If I was living at Schulenburg and desired to go to Muldoon, and had 200 pounds of baggage, I would have to get off at the Southern Pacific depot and pay 25 cents to get to the other depot.   If I should go to the intersection of the two roads, as they stand at present, I would find no shelter at all either for myself or baggage while waiting from the time I got off of the Galveston, Harrisburg & San Antonio Railroad until I got on the other train.   I would either be in the rain, heat, or cold, and my baggage exposed to the weather."

Nor is it a disputed fact, in the language of the same witness, "that it is for the business interests of the town for the depot to be where it now is, and that persons traveling through there are at more expense and trouble making changes than they would be if there was a depot at the point where the two roads cross."

The increased inconvenience and additional expense incurred in a single case for want of proper building and accommodation at intersection may not amount to much, but to the entire travel for a year it may become considerable, and so long as these things continue at all it can not be held that there has been a substantial compliance with the law.

It seems to be contended that the act in question can not be applied to appellant because it had constructed its depot in the town of Flatonia before the act was passed.

The act does not require it to remove that depot, nor does it seek to impose any penalty because it was there erected and is there still maintained, nor does it provide a penalty for a failure to erect and maintain a depot at point of intersection prior to the time the act took effect.

It matters not how many depots may have been erected and maintained by appellant at other points, for this can not excuse it for not complying with the act in question; nor can it be said that the property of appellant or of any citizen of Flatonia, within the meaning of the Constitution, will be taken, damaged, or destroyed by the erection and maintenance of all the houses and accommodations at point of intersection which the act requires.

There certainly never was a contract between appellant and the State that the former should not be required, whenever the Legislature deemed it necessary, to erect at the intersection of its road with another such buildings as were necessary for the convenience and comfort of those it serves as a public carrier of passengers.

It may be true that this was incumbent on all railway companies since the Act of February 7, 1854 (Revised Statutes, articles 4226, 4238), although no penalty for failure in this respect was prescribed until this was done by the act in question.    The act is one easily complied with, and if it operates harshly in some cases the Legislature, on coming to knowlege of these, would no doubt make such changes as might be necessary to relieve railway companies from unnecessary burdens and at the same time protect the traveling public from unnecessary inconvenience and expense.

    There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered January 16, 1891.