# MAY, 1933

## D. M. JONES ET AL. V. F. H. ALEXANDER ET AL.

No. 6234.  Decided May 3, 1933.
(59 S. W., 2d Series, 1080.)

*E. G. Senter* and *Claud C. Westerfield,* both of Dallas, for plaintiffs in error.

Public policy prevents a public official from holding two offices in Texas of emolument (except those enumerated in Art. 16, Sec. 40, Constitution) and the acceptance of the second office after qualifying for one ipso facto vacates the other. Biencourt v. Parker, 27 Texas, 558; State v. Brinkerhoff, 66 Texas, 45; Bishop v. State, 149 Ind., 223, 39 L. R. A., 278; Meachum Public Officers, pars. 422, 426; Shell v. Cousins, 77 Va., 328; Owens v. Draper, 45 Mo., 355; Montgomery v. State, 107 Ala., 380; Kimbrough v. Barnett, 93 Texas, 310, 55 S. W., 122; Bexar County v. Linden, 110 Texas, 344; Evans v. Trenton, 24 N. J. L., 764; State v. Lynch, 88 Ohio St., 71, 102 N. E., 670; 1914D Am. & Eng. Ann. Cas., 949.

The office of district judge and that of a member of Juve-

nile Board are incompatible, in that the District Judges in Texas under the Constitution and statutes of Texas are compelled to remove on proper grounds the members of said Juvenile Board, and also have original jurisdiction to try all county officials for misdemeanors involving misconduct which would place the District Judge in a position of ousting himself from office. Limestone County v. Garrett, 236 S. W., 970; Odem v. Sinton Ind. Sch. Dist., 234 S. W., 1090; R. S., 1925, Arts. 5870-5973, 5139-5141.

A power or duty which is not judicial, within the meaning of the Constitution, or statutes, is unconstitutional. In re House Bill No. 537, 113 Texas, 367, 256 S. W., 573; Ex parte Siebold, 100 U. S., 393, 25 L. Ed., 725; Robey v. County, 92 Md., 140, 48 Atl., 48; Reagan v. Farmers L. & T. Co., 154 U. S., 362, 38 L. Ed., 1014.

*William McCraw*, District Attorney for Dallas County, *Tom C. Clark*, Assistant District Attorney, and *Guy Mann*, all of Dallas, for defendants in error.

Courts will not declare an act of the Legislature unconstitutional unless specific provisions of the Constitution are pointed out that clearly inhibits such legislation. Roark v. Prideaux, 284 S. W., 628; Porter v. West, 111 S. W., 114; Orr v. Rhine, 45 Texas, 354; Houston & T. C. Ry. Co. v. Harris. Bros., 63 Texas, 256.

The creation of a Juvenile Board, Article 5139, R. S., 1925, whereby District Judges are made members of said Board and are paid $1,500.00 per annum each out of the general funds. of the county, does not create an office so as to make said judges hold two offices of emolument, but merely places on the District Judges additional duties of a judicial nature, which aids them in the performance of their duties in regard to minors. Eucaline Med. Co. v. Standard Inv. Co., 25 S. W. (2d) 259; City of Denison v. Municipal Gas Co., 257 S. W., 616;: Brown v. Wheelock, 75 Texas, 385, 12 S. W., 111; Clark v. Finley, 93 Texas, 171, 54 S. W., 343.

The duties imposed by article 5139 on district judges as members of the Juvenile Board are of a judicial nature and are, therefore, such as may be lawfully exercised by said judges. City of Hoboken v. O'Neill, 74 N. J. Law, 57; Eskridge v. City of Emporia, 63 Kan., 368; Eucaline Med. Co. v. Standard Inv. Co., 25 S. W. (2d) 259.

The Legislature has the right to use the population of a county, or its taxable value as a standard of measurement in

determining whether they should raise or lower the salary of a district judge. Bexar County v. Linden, 110 Texas, 339, 220 S. W., 761; Aransas Pass v. Keeling, 112 Texas, 339, 247 S. W., 818; Cherokee County v. Odom, 118 Texas, 288, 15 S. W. (2d) 538; Commissioners Court of Madison County v. Wallace, 118 Texas, 279, 15 S. W. (2d) 535; Glenn v. Levee District, 275 S. W., 137.

*C. W. Starling,* of Dallas, as amicus curiae.

MR. JUDGE SHARP delivered the opinion of the Commission of Appeals, Section A.

This cause is before the Supreme Court on certified questions from the Honorable Court of Civil Appeals for the Fifth Supreme Judicial District. The certificate reads as follows:

"D. M. Jones (plaintiff in error) as citizen taxpayer for himself and others similarly situated, and in his capacity as an officer and director of the Tax-Payers Protective League of Texas, an unincorporated association of taxpayers of the State, brought this suit against F. H. Alexander, county judge, and other members of the County Commissioners Court of Dallas County, to enjoin them from ordering payment, from the general funds of said county, of $1,500 per annum additional salaries to each of the district judges of said county as members of the Juvenile Board; Dallas County having a population in excess of 100,000, according to the preceding Federal census, has a Juvenile Board and is acting under the provisions of Title 82 R. S. 1925.

"Plaintiff alleged in substance: That since about the year 1917, the district judges of Dallas County have been paid, on orders of the Commissioners Court, out of the general funds of the county, an annual salary of $1,500 in addition to the regular salary of district judges; that such payments are now being made monthly by order of said Court and that payments will continue to be made unless defendants are restrained from authorizing same. It is alleged that defendants justify their action in ordering payment of said additional salaries, under Arts. 5139, 5140 and 5141 et seq. Title 82 R. S. 1925, the constitutional validity of which is attacked by plaintiff as basis for his contentions; wherefore, he sought injunctive relief to prohibit defendants, and each of them, from ordering further payments of said additional salaries, etc. Defendants, answering the suit, urged general demurrers to plaintiff's petition, which were sustained by the court and the cause dismissed, from which plaintiff appealed.

"As the case is now under submission, we deem it advisable to present to the Honorable Supreme Court for adjudication the issues of law necessary to a decision of the cause, as follows:

"(1)  Is membership on the Juvenile Board a public office in the sense that the exercise of the duties of such position by a district judge violates the provision of Art. 16 sec. 40 of the Constitution, that prohibits (with exceptions) the same person to hold or exercise at the same time more than one civil office of emolument, etc.?

"(2)  Was the Legislature constitutionally authorized to provide for the payment, annually, to certain district judges, members of county Juvenile Board, $1,500 in addition to the salary authorized by law to be paid other district judges of the State?

"(3)  Would the payment, on orders of the Commissioners Court, of such additional salaries violate sec. 51 of Art. 3 of the Constitution, as being unauthorized grants of public money?

"(4)  Do .these statutes (Arts. 5139, 5140 and 5141 et seq.) require the performance, by said district judges, as members of the Juvenile Board, of non-judicial functions in violation of Art. 2 sec. 1 of the Constitution that divides the powers of the State government into three district departments, Legislative, Executive and Judicial?"

Since Questions 1 and 4 are closely related, we will consider them together.  These questions involve the construction of Articles 5139 to 5143, inclusive, R. S., 1925, commonly known as the County Juvenile Board; Section 40 of Art. 16; Section 1 of Art. 2, and Section 8 of Article 5, of the Constitution.

■ Our Constitution, statutes and decisions of the courts clearly demonstrate that the district court is a popular tribunal in which jurisdiction of many matters is lodged.  As early as 1857, in the case of Grassmeyer v. Beeson, 18 Texas, 753, the Supreme Court, in discussing the jurisdiction of the district courts, held:

"* * *  Our Courts, possessing the powers of Courts of Chancery, may proceed to administer relief upon the principles of equity, as fully and completely as a Court of Chancery in England could do, without the aid of the Statute."

In Section 8 of Article. 5 of the Constitution is described the original and appellate jurisdiction of the district court.  This section, among other things, provides for "original jurisdiction and control over * * * minors under such regulations as may be prescribed by law."  That the framers of the Constitution intended to confer broad jurisdictional powers upon the district.

court, is clearly shown in the following language: "and (the district court) shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution, and such other jurisdiction, original and appellate, as may be provided by law." Section 40 of Article 16 of the Constitution in part, reads as follows: "No person shall hold or exercise, at the same time, more than one civil office of emolument, except that of justice of the peace, county commissioner, notary public and postmaster, office of the National Guard, the National Guard Reserve, and the Officers Reserve Corps of the United States, and enlisted men of the National Guard, the National Guard Reserve, and the organized Reserves of the United States, unless otherwise specially provided herein." This is followed with a proviso containing certain exceptions which are not pertinent to the questions under consideration.

The welfare of minors has always been a matter of deep concern to the State. In England it was one of the most important branches of equity jurisdiction and frequently exercised by the courts of Chancery. Pomeroy's Equity Jurisprudence, Volume 3, Fourth Addition, sections 1303 et seq., pp. 3139, 3140, etc.

In addition to the constitutional provisions above cited, the statutes confer, among many other duties, jurisdiction over the affairs of minors in the district courts of certain counties to be exercised in connection with other persons. For this purpose the Legislature enacted Articles 5139, et seq.

Article 5139 provides that in any county having a population of one hundred thousand or over, the judges of the several district and criminal district courts of such county, together with the county judge of such county, are constituted a Juvenile Board and fixes the annual salary of each of such district judges as members of said board at $1,500 in addition to that paid the other district judges of the State, said additional salary to be paid monthly out of the general funds of such county, upon the order of the commissioners court. Article 5140 provides that "such Board shall neither have nor exercise judicial power or function." It further provides what steps may be taken when "any child should be adjudged either dependent, neglected or delinquent." The other articles of this Act describe in detail the methods of carrying into effect the provisions of this statute.

The foregoing Act assigned to the district judges the following duties to be exercised by them, either together or

separately: (1) To exercise a supervision over minors residing or found in the county who may be either dependent, neglected or delinquent; (2) to obtain information concerning the welfare of such minors; and (3) to direct such action by probation officers to be appointed by the judges and such action by courts and persons having custody of such minors as may be deemed proper.

Many instances can be cited where the Legislature has imposed upon district judges additional duties not strictly judicial. To illustrate: They shall appoint county auditors (Art. 1647, R. S., 1925); at the instance of the grand jury may appoint a committee of accountants to examine the finances of the county (Art. 1638); are required to fill vacancies in the office of the district clerk (Art. 1895); appoint official court reporters (Art. 2321); shall remove disabilities of minors (Arts. 5921 to 5923); shall appoint jury commissioners (Art. 2104); and to perform certain duties imposed by the Administrative Judicial Districts Act (Art. 200a).

Likewise, the Governor is prohibited by the Constitution from holding any other office. (Section 6 of Article 4). Yet he is a member of several boards as provided for by the statutes, viz: Board appointing Commissioner of Markets & Warehouses (Art. 5562); Board of Equalization in unorganized counties (Art. 7231); Board of Trustees for School of Blind (Art. 3206); State Board of Canvassers (Art. 3068); State Board of Education (Art. 2664); State Bureau of Child and Animal Protection (Art. 4597); State Naval Board (Art. 5891); Tax Board (Art. 7041); Text Book Commission (Art. 2839).

Many decisions could be cited on this question but we will refer only to a few of them. In the case of Arnold v. State, 71 Texas, 239, 9 S. W., 120, our Supreme Court held that such appointments of the governor were not prohibited by the Constitution, because he was the chief executive officer of the state. In the case of Legate v. Legate, 87 Texas, 248, 28 S. W., 281, it was held that under the present Constitution the district courts have jurisdiction to issue the writ of habeas corpus and decide to whom the custody of a child rightfully belongs. In Brown v. Wheelock, 75 Texas, 385, 12 S. W., 111, it was held that the act of the district judge in removing the disabilities of a minor was not a judicial act. See, also, Cunningham v. Robison, 104 Texas, 227, 136 S. W., 441; State v. DeSilva, 105 Texas, 95, 145 S. W., 330. In the case of Binford v. Robinson, 112 Texas, 84, 244 S. W., 807, the Supreme Court, speaking through Judge Pierson, held that a district judge refusing to

approve the sheriff's account would be required to do so by mandamus. In the recent case of Rogers v. Lynn, 121 Texas, 467, 49 S. W. (2d) 709, was involved the question whether the acts of the district judge in approving or refusing to approve the accounts of a county attorney were judicial or non-judicial and Judge Critz, in an opinion expressly approved by the Supreme Court, held that his acts were non-judicial.

The Constitution of 1845, of 1861 and of 1866 contained a provision identical in the three documents as follows: "No person shall hold or exercise at the same time more than one civil office of emolument, except that of Justice of the Peace." (Art. 7, sec. 26). This provision is the same as in the present Constitution, save that the exception in the Constitution of 1876 (Art. 16, sec. 40) adds other offices to that of Justice of the Peace. The Constitution of 1869 extended the prohibition of holding more than one civil office of emolument to *"agencies or appointments of trust or profit under the State."* A comparison of the language in the Constitution of 1869 and our present Constitution will show that the broad language used in the Constitution of 1869 was omitted in the present Constitution. Under a provision of the Constitution then existing, substantially identical with that provision we now have under consideration, the Supreme Court in the case of Powell v. Wilson, 16 Texas, 59, said:

"But does it follow that the same or at least some of the same duties, may not be attached to two offices to be exercised by the incumbents concurrently? Or that the duties of an office may not be to act as substitute for another? We think not. It does not constitute them incumbents of more offices than one, or subject them to the charge of holding or exercising two or more offices at the same time.

See, also, Kirk v. Murphy, 16 Texas, 654; Gaal v. Townsend, 77 Texas, 464.

■ Unless the duties placed upon the district judges by virtue of this Act create more offices than one, or subject them to the rule that they cannot hold two or more offices at the same time, or that the additional duties imposed are incompatible with their other duties conferred upon them by law, then the Act cannot be condemned. The duties assigned by this Act partake of the same general characteristics of other duties imposed by law. The duties assigned are made co-terminous, in that the district judge ceases to sit as a member of the Juvenile Board when his term of office expires.

Using the plain language of the Constitution, which pro-

vides that the district court shall have "original jurisdiction and control over minors under such regulations as may be prescribed by law," as a basis upon which to plant the validity of Articles 5139 et seq., which imposes additional duties upon district judges in certain counties for which extra compensation will be allowed, and when considered in connection with the many legislative acts imposing many other duties not strictly judicial upon district judges and the decisions of our courts bearing upon this question, we are unable to find any sound reason for holding that this Act contravenes Section 40 of Article 16 of the Constitution or of any other provision of the Constitution.

We answer Questions 1 and 4 "No."

■ Question No. 2 should be answered in the affirmative. The Supreme Court of this State has repeatedly held that courts have no right to declare an act of the legislature void, unless able to point to some provision of the Constitution which prohibits the act or from which the prohibition necessarily arises. Lytle v. Halff & Bro., 75 Texas, 128, 12 S. W., 610; Harris County v. Stewart, 91 Texas, 133, 41 S. W., 650; Smisson v. State, 71 Texas, 222, 9 S. W., 112; San Antonio & A. P. Ry. Co. v. State, 79 Texas, 264, 14 S. W., 1063.

■■ The Constitution has placed no limitation upon the legislature as to the amount of salaries to be paid district judges. Therefore, the legislature has a right to pass an act lowering or raising the salaries of district judges. In fixing the amount of such salaries, the legislature may take into consideration the population and size of the county, its taxable values, and the general conditions existing therein. The Legislature in this instance has seen fit to place certain additional duties upon the district judges in certain counties and has allowed extra compensation for such service. In doing this, the Legislature acted clearly within its constitutional powers. Clark v. Finley, 93 Texas, 171, 54 S. W., 343.

The case just cited involved the construction of the Act of 1897 (Laws 1897, p. 5) passed at the Called Session of the 25th Legislature for the purpose of limiting the compensation of certain officers and reducing the fees of office. The Act specially reduced certain fees of sheriffs and constables in certain counties of the State. It was contended that the Act was discriminatory, that the classification was unreasonable and was enacted for the purpose of evading the Constitution. Chief

Justice Gaines, in the opinion, squarely met the issue and declared the law in the following words:

"A legislature may reach the conclusion that the compensation of certain officers in certain counties of the state is excessive, while others it is not more than enough. By the reduction of the fees of office throughout the state they may correct the evil in those in which the compensation is too great, but they would probably inflict a greater evil by making the compensation too small in all the others. In such a case it becomes necessary to make the law applicable to some, and not to all. There must be a classification. That classification may be either by population or by taxable values. One legislature might do, as the legislature of Texas did, make the classification by population; another, as was done by the legislature of Arizona, might make the taxable values of the respective counties the basis of the classification. Shall the courts inquire which is correct? Can they say that the work of an officer is not, in some degree, proportionate to the population of his county? On the other hand, can they say that, the more the property of a county, the more the crime? To ask these questions is to make it apparent that they are questions of policy, determinable by the political department of the government, and not questions the determination of which by the legislature is subject to review by the courts."

██ Question No. 3 involves the construction of Section 51 of Article 3 of the Constitution. The pertinent part of that section reads as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporations whatsoever."

It is contended that the Act involved here violates the foregoing provision of the Constitution, in that it authorizes the payment of $1,500 to certain district judges as additional compensation, to be paid monthly out of the general funds of such county, upon the order of the commissioners court. The language of this Act plainly shows that it was the outstanding purpose of the Legislature to place the care and control of minors in such county or under the jurisdiction of any of its courts under a more direct supervision of the district judges of those counties. To that end, this law was enacted. In addition to the many duties conferred upon district judges, the Constitution provides that they shall "be conservators of the peace." (Sec. 12 of Art. V). The Legislature evidently thought that by plac-

ing the minors under a more direct supervision of the district judges of those counties, it would be helpful to the minors and beneficial to the public welfare. It is quite plain that if the powers conferred upon the district judges over minors are properly exercised, it will have a tendency to lessen crime and reduce the expenses of the courts. Considering our form of government, a more direct, efficient and responsible method could not be designed. The law is wholesome and if properly executed, its purposes should be accomplished.

The Constitution prohibits the Legislature from appropriating the public money to other than strict governmental purposes. If the amount designated to be paid the district judges in addition to their regular salary for the duties imposed is not for services of a governmental nature, then, of course, the law in that respect is void. The authorities hold that the county is an arm of the State, a political subdivision thereof, and in view of the relations of the counties to the State, their functions and uses, the State government must of necessity function through the counties as its agents. That the State may use the counties for this purpose is now well established. The use of counties as agents of the State in the discharge of the States' duty, is not prohibited by Section 51 of Article 3 of the Constitution. Aransas Pass v. Keeling, 112 Texas, 345, 247 S. W., 818; Bexar County v. Linden, 110 Texas, 344 to 348, 220 S. W., 761; City of Galveston v. Posnainsky, 62 Texas, 127, 50 Am. Rep., 517; Weaver v. Scurry County, 28 S. W., 836.

Question No. 3 should be answered "No."

We recommend that the questions be answered as above indicated.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.